IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDY SANTOS HERNANDEZ HERNANDEZ, SHAO JUN CHEN, SHUANG YAN GUO, ZAKRIA MOHAMED ZAKRIA SADHOM,<br><br>Petitioner,<br><br>v.<br><br>JAMES JANECKA, ET AL.,<br><br>Respondents. | Case No. 5:26-cv-00710-MBK<br><br>ORDER GRANTING PETITION AND ISSUING A WRIT FOR HABEAS CORPUS |

    Petitioners Brendy Santos Hernandez Hernandez, Shao Jun Chen, Shuang Yan Guo, and Zakria Mohamed Zakria Sadhom are currently in the custody of the Department of Homeland Security at the Adelanto Detention Facility. Immigration authorities apprehended the Petitioners in 2024 after they entered the United States without inspection, and subsequently released each of them on supervision pending their removal proceedings. The

1 Petitioners had all complied with their conditions of supervision until, several
2 months ago, they were re-detained by immigration authorities.
3    In this habeas action, Petitioners argue that their confinement violates
4 due process because the Government re-detained them without notice or an
5 opportunity to be heard. As a threshold matter, the Court concludes that
6 Petitioners can collectively proceed in a joint petition under Federal Rule of
7 Civil Procedure 20(a) because their claims arise out of similar factual
8 circumstances and present common questions of law. On the merits, the Court
9 finds that Petitioners' sudden detention—without any pre- or post-deprivation
10 process—violated their due process rights. The Court therefore grants the
11 Petition and issues a writ of habeas corpus requiring Petitioners' immediate
12 release and preventing their re-detention absent pre-deprivation notice and a
13 hearing at which the Government must justify the need to detain them.

## I.     FACTUAL BACKGROUND

Four Petitioners join their claims in this action. The Court summarizes the factual background of each Petitioner separately.

### A. Petitioner Brendy Santos Hernandez Hernandez

Petitioner Brendy Santos Hernandez Hernandez is a 24-year old citizen and national of Guatemala. Dkt. 1 at 6. Ms. Hernandez fled to the United States fearing persecution in her home country. *Id.* She entered the United States without inspection on May 28, 2024, and was apprehended by immigration authorities the following day. *Id.* On June 1, 2024, the Department of Homeland Security ("DHS") filed a Notice to Appear ("NTA") charging Ms. Hernandez as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) for entering without being admitted or paroled. *Id.* at 7, 34. Ms. Hernandez was released from custody pursuant to 8 U.S.C. § 1226(a), subject to supervision

under Immigration and Customs Enforcement's ("ICE's") Intensive Supervision Appearance Program ("ISAP"), including regular reporting to ICE. *Id.* at 7. Ms. Hernandez was ordered to appear at a future hearing before an Immigration Judge ("IJ") scheduled for November 13, 2024. *Id.* at 32.

In the time since she was released, Ms. Hernandez reported to ICE as required, applied for asylum, and received a work permit. *Id.* at 30. On July 4, 2025, ICE officers arrested Ms. Hernandez while she was working as a street vendor in Los Angeles. *Id.* The unidentified officers did not provide any explanation for why they arrested her. *Id.* Ms. Hernandez alleges that she was arrested "solely on account of her Latino appearance and occupation." *Id.* at 7. Ms. Hernandez further alleges that at the time of her arrest, she was not engaged in any illegal activities, was unarmed, was not threatening or dangerous, and did not flee or attempt to flee from the arresting officers. *Id.*

Following her arrest, Ms. Hernandez was transported to Adelanto Detention Facility, where she remains today. *Id.* at 30. Ms. Hernandez has been ill while in custody at Adelanto. *Id.* She has had an allergic reaction on her arms that has not been effectively treated. *Id.* Ms. Hernandez also experienced an unspecified illness that required her hospitalization for nine days. *Id.* She describes the detention facility as very cold, crowded, with "inedible" food, and insufficient blankets to keep warm—despite her requests for additional clothes or blankets. *Id.* Ms. Hernandez has experienced depression and nightmares while detained at Adelanto. *Id.* Ms. Hernandez indicates that she has family in the United States, who are suffering without her support. *Id.*

**B. Petitioners Shao Jun Chen and Shuang Yan Guo**

Petitioners Shao Jun Chen and Shuang Yan Guo, a married couple, are

1  nationals and citizens of China. *Id.* at 7. Mr. Chen, who is 36 years old, and
2  Ms. Guo, who is 32 years old, both fled to the United States fearing
3  persecution in China. They entered the United States without inspection on or
4  around February 21, 2024. *Id.* at 7, 37, 40. Customs and Border Patrol
5  ("CBP") officers apprehended Mr. Chen and Ms. Guo soon after their entry to
6  the United States. *Id.* at 7. Mr. Chen and Ms. Guo were released shortly
7  thereafter pursuant to 8 U.S.C. § 1226(a), enrolled in ISAP, and required to
8  regularly report to ICE. *Id.* at 8. On February 22 and 23, 2024, DHS filed
9  NTAs charging Mr. Chen and Ms. Guo as inadmissible under 8 U.S.C. §
10 1182(a)(6)(A)(i) for entering the United States without being admitted or
11 paroled. *Id.* at 42, 43. Their initial hearing before an IJ was scheduled for
12 January 31, 2025. *Id.*

13      Since their initial release, Mr. Chen and Ms. Guo filed individual
14 applications for asylum and were issued work permits. *Id.* at 8, 37. Documents
15 attached to the petition indicate that Mr. Chen applied for asylum in March
16 2024. *Id.* at 48. Mr. Chen and Ms. Guo have complied with conditions of
17 supervision, including by attending ICE check-ins, since their release from
18 custody. *Id.* at 37, 40.

19      On October 23, 2025, Mr. Chen and Ms. Guo drove together to their
20 work in Ontario, California. *Id.* at 37, 40. When they arrived, three unmarked
21 cars blocked their way to the entrance. *Id.* at 8, 37, 40. Unidentified, masked,
22 and "heavily armed" individuals jumped out of the cars, approached
23 Petitioners, forcefully pulled them out of their vehicle, and asked for their
24 identification cards. *Id*. Petitioners provided their identification cards and
25 their work permits. *Id*. Petitioners "both were so scared since we didn't know
26 who these people were." *Id.* at 40. The masked individuals arrested Mr. Chen
27 and Ms. Guo and transported them to Adelanto Detention Facility the same
28

day. *Id.* at 8, 37, 40. Mr. Chen and Ms. Guo allege that they were not engaging in any illegal activity, were not armed or otherwise dangerous, and did not flee from the arresting officers at the time of their arrest. *Id.* at 8.

Mr. Chen and Ms. Guo have been housed separately from each other at Adelanto and are unable to see each other. They miss their family members, "especially" their spouse and "children." *Id.* at 37, 40. Mr. Chen and Ms. Guo describe the conditions of confinement at Adelanto as "extremely bad." *Id.* at 37, 40. Like Petitioner Hernandez, they describe overcrowded and very cold environments, where detainees get sick often, without adequate medical treatment or edible food. *Id.* at 37, 40. Both Mr. Chen and Ms. Guo have contracted the flu, experience insomnia, anxiety, depression, stress, and nightmares while in confinement at Adelanto. *Id.* at 37, 40. Ms. Guo has "severe stomach problems," and has needed to seek frequent medical treatment for her condition while detained at Adelanto. *Id.* at 40. However, Ms. Guo describes the treatment as ineffective. *Id.*

Upon her arrival to Adelanto, immigration officials required Ms. Guo to pay $5,000 as a "penalty," though they did not inform Ms. Guo as to the nature of the penalty or any other reason for the fee. *Id.* at 40, 44-45. It is unclear from the Petition whether Mr. Chen was also required to pay a similar penalty, but Petitioners attach two receipts for $5,000 each to "Pay.gov," for "DHS Immigration and Nationality Civil Penalty" as exhibits to the Petition. *Id.* at 44-45.

### C. Petitioner Zakria Mohamed Zakria Sadhom

Petitioner Zakria Mohamed Zakria Sadhom is a 24-year-old native and citizen of Egypt. *Id.* at 65. Mr. Sadhom fled Egypt fearing persecution and entered the United States without inspection in 2024. *Id.* at 4, 8. Mr. Sadhom

5

was apprehended by CBP officers shortly thereafter and taken into CBP custody. *Id.* at 8. On March 14, 2024, Respondents filed an NTA charging Mr. Sadhom as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) for entering without being admitted or paroled. *Id.* at 9, 67. Mr. Sadhom was released from custody pursuant to 8 U.S.C. § 1226(a) subject supervision under ISAP, including regular reporting to ICE. *Id.* at 9. Mr. Sadhom was ordered to appear before an IJ on August 2, 2024. *Id.* at 67. Mr. Sadhom appeared at his hearings and applied for asylum. *Id.* at 9. During his time in the United States, Mr. Sadhom had not violated any of his conditions of release. *Id.* at 71.

On August 5, 2025, Mr. Sadhom arrived at work, when two masked individuals stopped him and showed him a photo of a person who appeared to be the owner of the store at which Mr. Sadhom worked. *Id.* at 65. Mr. Sadhom advised them that he was not the person in the photo. *Id.* After Mr. Sadhom presented the individuals with his identification documents, as well as documents showing he was released from detention, the individuals indicated (in English) that they were going to arrest him. *Id.* at 9, 65. Mr. Sadhom speaks Arabic and did not fully understand what the individuals said to him. *Id.* Fearing that the individuals were going to harm him and exacerbate a head injury he had sustained in Egypt, Mr. Sadhom tried to run away from the officers on foot. *Id.* at 65, 71. The officers chased Mr. Sadhom in vehicles, ultimately hitting him with their cars and causing injury to his legs. *Id.* at 65. The officers "jumped out of the cars and [two] of them beat [Petitioner] up." *Id.* at 8, 65. After apprehending Mr. Sadhom, the officers told Petitioner that if they could find the owner of the store, they would release him. *Id.* at 8, 65. Nonetheless, despite subsequently finding the owner of the store, the officers did not release Mr. Sadhom. *Id.* at 10, 65.

As a result of this incident, Mr. Sadhom sustained injuries to his legs,

which prevented him from walking for two weeks. *Id.* at 8, 65. Upon his arrest and detention, immigration officials transported Mr. Sadhom to a temporary detention facility in Los Angeles, did not provide him with medical care for his leg injuries, and transferred him to Adelanto two days later. *Id.* at 10, 65. Petitioner describes similar conditions of confinement in Adelanto as Ms. Hernandez, Mr. Chen, and Ms. Guo. *Id.* at 65. He also became sick, depressed, and experiences nightmares. *Id.* Mr. Sadhom has not received medical treatment for his leg injuries while detained at Adelanto. *Id.*

## II. PROCEDURAL HISTORY

Petitioners filed the instant habeas petition on February 15, 2026. Dkt. 1. Respondents filed their Answer on February 24, 2026. Dkt. 6. Petitioners filed a reply on February 26, 2026. Dkt. 7. The parties appeared for a hearing on February 27, 2026. Dkt. 4. At the hearing, counsel for Petitioners withdrew Petitioners' claims for relief except for their procedural due process claim. Dkt. 10. Both parties have consented to proceed before the Magistrate Judge. Dkts. 8, 9.

## III. DISCUSSION

The Court begins by addressing Respondents' argument that Petitioners are improperly joined under Federal Rule of Civil Procedure 20, before turning to the merits of Petitioners' due process claims.

**A. Petitioners' Claims Are Properly Joined Under Rule 20**

Respondents argue that Petitioners are misjoined and should not be able to proceed collectively in this action. Specifically, Respondents argue that "to the extent the aggregated Petitioners all simply seek a bond hearing under Section 1226(a), their claims may be resolved in that shared context," but that

"[t]o the extent the Petitioners go further and attempt to assert other unrelated procedural problems in their individual detentions, however, their claims are not properly asserted in a combined habeas petition." Dkt. 6 at 2.

The Habeas Rules do not specifically address whether individuals may jointly file a habeas petition. The Court therefore considers whether joinder is appropriate under the Federal Rules of Civil Procedure. *See* Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), Rule 12 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."). *See also* Habeas Rule 1(b) (providing that a "district court may apply any or all of these rules" to Section 2241 petitions).

Federal Rule of Civil Procedure 20 provides that plaintiffs "may join together in one action" where: (1) "any right to relief [is asserted] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (2) "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a). "Even once these requirements are met, a district court must examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (internal quotation marks omitted).

"District courts retain broad discretion in applying Rule 20." *Colors of India v. Nielsen*, No. 18-cv-4070-MWF-AS, 2018 WL 6430118, at *3-4 (C.D. Cal. Oct. 19, 2018). The propriety of permissive joinder must be assessed on a case-by-case basis. "On the whole, '[t]he transaction and common-question requirements prescribed by Rule 20(a) are not rigid tests,' but rather 'are flexible concepts used by the courts to implement the purpose of Rule 20 and

therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy.'" *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1187-88 (C.D. Cal. 2015) (quoting 7 Charles Alan Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 1653 (3d ed. 2014)); *Corley v. Google, Inc.*, 316 F.R.D. 277, 282 (N.D. Cal. 2016) ("The rules regarding permissive joinder are 'to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes.'") (quoting *League to Save Lake Tahoe v. Tahoe Reg. Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977)).

      The Court finds that Petitioners meet Rule 20(a)'s transaction requirement. This requirement may be met where the joined parties demonstrate "factual similarity in the allegations supporting [their] claims." *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013). "'Rule 20's same transaction requirement may comprehend a series of occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.'" *Mahonak v. Rubio*, No. 8:24-cv-01443-FWS-DFM, 2025 WL 449044, at *10–11 (C.D. Cal. Feb. 10, 2025) (quoting *Gutta v. Renard*, 2021 WL 533757, at *5 (N.D. Cal. Feb. 12, 2021). The logical-relationship "standard enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding under the provisions of Rule 20." 7 Charles Alan Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 1653 (3d ed.).

      Here, Petitioners' claims arise out of their recent re-detentions by immigration authorities. Respondents contend that Petitioners' claims present distinct factual circumstances because they "entered the country on different dates and under different circumstances, were released in the community on

different dates and under different circumstances, and taken into custody on different dates and under different circumstances." Dkt. 6 at 3. While the facts underlying Petitioner's claims are not identical, Petitioners are similarly-situated in all relevant respects. Each Petitioner entered the United States without in inspection in the first half of 2024 and was subsequently released under Section 1226(a) on conditions of supervision pending their removal proceedings. Dkt. 1 at 3-4. Each was re-detained several months ago without any pre-deprivation notice or opportunity to be heard. *Id.* And each had complied with their conditions of release until their sudden re-detentions. *Id.* Under these circumstances, Petitioners have shown that there is sufficient "factual similarity" in their cases and logical relationship between their claims such that joinder is appropriate under Rule 20. *Visendi*, 733 F.3d at 870.

The Court also finds that Petitioners raise common questions of law under Rule 20. Petitioners raise identical due process claims challenging their re-detention without pre-deprivation notice or a hearing. Respondents concede that Petitioners present "some common questions of law," but argue that "the factual disparities between each Petitioner's circumstances would require individual analysis by the Court and thus favor severance." Dkt. 6 at 3. Respondents also assert "Petitioner's claims would rely on different evidence and witnesses and would require separate analysis." *Id.* at 4. However, Respondents do not explain how any factual disparities regarding Petitioners' immigration history or re-apprehension materially impact the evaluation of their claims. Such vague and unsupported concerns are insufficient to defeat joinder. *See Johnson v. High Desert State Prison*, 127 F.4th 123, 134 (9th Cir. 2025) (finding that a district court abused its discretion by denying joinder of three pro se inmates' civil rights claims based "on hypothetical concerns that were without support in the record").

As explored further *infra*, the Court applies the same legal framework to evaluate Petitioner's procedural due process claims. Petitioners all seek the same process—pre-deprivation notice and a hearing—to ensure their re-detention is justified. These determinations would be conducted by the immigration courts, not this Court, in the first instance. Petitioners' due process claims therefore present quintessential "common" questions of law that can be resolved across these four similarly-situated Petitioners. Indeed, Respondents concede that Petitioners' claims to a post-deprivation bond hearing would be appropriately brought in a collective action. *See* Dkt. 6 at 2 ("to the extent the aggregated Petitioners all simply seek a bond hearing under Section 1226(a), their claims may be resolved in that shared context"); *id.* at 3 (arguing that Petitioners' claims are "dependent on the factual circumstances unique to each Petitioner" "to the extent it extends beyond the asserted entitlement to a bond hearing").[1] But, with respect to permissive joinder, there is no meaningful difference between Petitioner's entitlement to a pre-deprivation hearing or a post-deprivation bond hearing. Both claims rest on a common legal analysis and seek the same basic relief—a hearing to determine whether detention is justified.

Consistent with this understanding, multiple district courts in the Ninth Circuit have found joinder appropriate where noncitizens jointly filed habeas petitions challenging their confinement by DHS based on similar claims to those presented here. *See Arminder Singh, et al., v. Warden of the Golden State Annex Det. Facility, et al.*, No. 1:26-cv-00353-KES-EPG, 2026 WL

---

[1] The Petition does not in fact include a claim to a bond hearing. Respondents' confusion may result from Petitioners' allegation they are "are not eligible for bond and release as a matter of law because each is not subject to section 1226(a) but must be mandatorily detained under section 1225(b)(2)," pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec 216 (BIA 2016). Dkt. 1 at 23-24. However, this statement was made in support of Petitioners' claim that their re-detention violated Section 1226(a). They subsequently withdrew this claim. Dkt. 10.

11

1 388738, at *1 (E.D. Cal. Feb. 11, 2026) (finding permissive joinder appropriate
2 for two petitioners challenging their re-detention by immigration authorities
3 without a hearing under Section 1226(a)); *Espinoza v. Kaiser*, No. 1:25-CV-
4 01101 JLT SKO, 2025 WL 2581185, at *9 (E.D. Cal. Sept. 5, 2025) (same with
5 respect to six petitioners, observing that "it is not unprecedented for a district
6 court to issue injunctive relief to multiple immigration detainees joined into
7 one habeas Petition").

8       The Court is cognizant that some other district courts have suggested
9 that "permitting multiple petitioners to file a single habeas petition . . .
10 generally is not permitted." *Acord v. California*, No. 1:17-cv-01089-MJS-HC,
11 2017 WL 4699835, at *1 (E.D. Cal. Oct. 19, 2017); *Watkins v. Hedgpeth*, No.
12 1:07-cv-00767-AWI-DLB, 2007 WL 2109255, at *1 (E.D. Cal. July 23, 2007)
13 ("only one individual may file a petition for writ of habeas corpus"). However,
14 these decisions appear to rest on the assumption that there is no provision
15 authorizing joint habeas petitions. *Acord*, 2017 WL 4699835, at *1 ("There is
16 no authority for permitting multiple petitioners to file a single habeas petition
17 under 28 U.S.C. § 2254 . . . ."). But as discussed above, Habeas Rule 12
18 expressly provides that district courts may apply the Federal Rules of Civil
19 Procedure "to the extent that they are not inconsistent with any statutory
20 provisions or these rules, may be applied to a proceeding under these rules."
21 There does not appear to be any inconsistency between permissive joinder
22 under Rule 20 and the rules and statutes governing Section 2241 habeas
23 petitions. "In the absence of any specific statute or rule establishing a per se
24 prohibition on joinder of multiple habeas petitions in one action, this Court
25 cannot conclude that such joinder is impermissible where the requirements of
26 Rules 18 and 20 are otherwise satisfied." *Pablo Sequen v. Kaiser*, No. 25-cv-
27 06487-PCP, 2025 WL 3275602, at *4 (N.D. Cal. Nov. 24, 2025).
28

It is also significant that the federal courts have recognized the availability of other forms of collective habeas claims. The Ninth Circuit has long "held that a class action may lie in habeas corpus." *Cox v. McCarthy*, 829 F.2d 800, 804 (9th Cir. 1987) (citing *Mead v. Parker*, 464 F.2d 1108, 1112-13 (9th Cir. 1972)). It has applied Federal Rule of Civil Procedure 23 to determine whether petitioners can maintain their claims on a class-wide basis. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1122-23 (9th Cir. 2010) (upholding certification of a class of immigration detainees challenging their detention without a bond hearing on statutory and due process grounds). One of the "prerequisites" to class certification under Rule 23 is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). It would be incongruous to construe the Habeas Rules and Federal Rules to permit large groups of habeas petitioners to join together in a class action under Rule 23, but not to permit smaller numbers to bring a joint petition.

Finally, the Court finds that joinder comports with "fundamental fairness" and would not "prejudice either side." *Coleman*, 232 F.3d at 1296. Respondents do not claim that they are prejudiced by having to defend against Petitioners' claims in a single lawsuit. Joinder will ensure the efficient and expeditious resolution of Petitioners' claims, which both comports with "fundamental fairness" and advances Rule 20's purposes. This is particularly true given the circumstances in which this Petition was filed. The Central District is currently experiencing a significant increase in habeas petitions filed by noncitizens in immigration detention. The increase has strained the resources of the District, the Department of Justice (who represents the Respondents in these matters), and the Federal Public Defender and legal service providers (who often represent the Petitioners). Particularly at this

13

time, judicial economy concerns support applying Rule 20 to permit joinder in appropriate cases like this one—rather than further burdening the parties, their counsel, and courts with multiple additional habeas cases presenting virtually identical claims.

### B. Petitioners' Ongoing Detention Violates Due Process

The Court now turns to the merits of Petitioners' due process claims.

As an initial matter, the Court observes that Respondents did not respond to Petitioner's procedural due process claim in their Answer. In fact, Respondents' Answer lacks any response to the merits the Petition, including Petitioners' now-withdrawn claims under the Fourth Amendment and INA. Instead, Respondents only contest joinder and the appropriate remedy in the event that Petitioners prevail on their claims. *See* Dkt. 6 at 4-5 (arguing that "to the extent Petitioners would be entitled to any remedy via the Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under Section 1226(a)").

At the February 27, 2026, hearing, counsel for Respondents indicated that Respondents opposed Petitioners' claims based on arguments they have made in similar cases. But it is doubtful such belated oral arguments are sufficient to properly preserve any arguments or defenses to Petitioners' claims. In its order requiring a response to the Petition, the Court expressly instructed that "Respondents must address the merits of all grounds for relief asserted in the petition" and that the "[f]ailure to file an Answer by the deadline, or to respond to Petitioners' claims for relief, may be deemed as consent to the granting of the Petition." *See* Dkt. 5 at 2. Under these circumstances, Respondents' failure to contest Petitioner's claims in their Answer is a concession that the Petition should be granted. *See Singh v.*

*Warden Desert View Annex, et al.*, No. 26-cv-00440-FMO-AJR, Dkt. 9 (C.D. Cal. Feb. 9, 2026) (granting petition where "the court construes respondents' failure to address petitioner's due process claim as a concession of petitioner's argument"); *Soleimani v. Larose*, No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting petition because, "[b]y failing to respond to the claims actually asserted, Respondents have conceded the claims"). *See also N-E-M-B v. Wamsley*, No. 3:25-cv-989-SI, 2025 WL 3527111, at *1 (D. Or. Dec. 9, 2025) ("Respondents do not challenge any aspect of the Petition on the merits and thus the Court finds that Respondents have waived such challenges and conceded those aspects of the Petition.").

Regardless, even if Respondents had not conceded the issue, the Court would grant the Petition on the merits of Petitioners' due process claim. A growing body of decisions in this District and across the Ninth Circuit—including by the undersigned Magistrate Judge—have found that immigration authorities violated or likely violated due process by re-detaining noncitizens who had been released shortly after their entry to the United States without notice or an opportunity to be heard. *See M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen who had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in). *See also Cruz v. Lyons, et al.*, No. 5:25-cv-02879-MCS-MBK (C.D. Cal. Nov. 6, 2025) at Dkt. 12 (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in

the United States and was re-arrested at ICE check-in).

As in these cases, the Court considers Petitioners' procedural due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

**1. Private Interest**

With respect to the first *Mathews* factor, Petitioners have a substantial liberty interest in maintaining their lives out of custody. While Petitioners have remained subject to supervision following their releases in 2024, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioners' release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

The Petitioners all resided in the United States for approximately a year and half before their recent re-detentions. As their circumstances illustrate, a person can develop meaningful ties in such a relatively short period of time. Following their release from immigration custody, Petitioners

16

have resided with family members, obtained work permits and held down employment, and deepened their connections with their family and communities in the United States. *See* Dkt. 1 at 30, 37, 40, 65 (describing Petitioners' lives and connections in the United States while released on supervision). While individuals apprehended shortly after entry in the United States may have "a lesser liberty interest" "at the margin" than other noncitizens who have resided in the United States for decades, "the same important interest is at stake—freedom from prolonged detention." *Diouf v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *overruled on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022).

Consistent with this conclusion, multiple courts have found that noncitizens developed protectable liberty interests in their release from immigration custody for periods comparable to those at issue here. *See, e.g.*, *Clene C. D. v. Robbins*, No. 1:25-CV-01463-KES-SKO, 2025 WL 3492118, at *5 (E.D. Cal. Dec. 4, 2025) (finding a petitioner had a constitutionally protected liberty interest in "eleven months she spent at liberty" following release under Section 1226(a)); *Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to petitioner released for "over two years" under Section 1226(a)); *Pinchi*, 792 F. Supp. 3d at 1034 (same, for petitioner released "over two years" under Section 1226(a)); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–22 (W.D. Wash. 2025) (same, petitioner released for approximately 21 months under Section 1226(a)).

The Court therefore concludes that the Due Process Clause protects Petitioners' substantial liberty interest in maintaining their freedom from confinement.

**2. Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention hearing." *Cruz*, No. 5:25-cv-02879, Dkt. 12 at 7. The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). But Petitioners have not been afforded any process to determine whether their detention in fact advances either purpose.

The record suggests that Petitioners are not a flight risk or danger. Petitioners' initial release from custody "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioners were released on conditional parole pursuant to 8 U.S.C. § 1226(a). Under Section 1226's implementing regulations, the Government may order such release "provided that the alien [] demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Since their release, Petitioners have not given any reason to think that the Government's initial determination was in error. Petitioners complied with their conditions of supervision, including by reporting for regular check-ins with ICE. They have had no criminal arrests or convictions during her

1 time in the United States. Based on this record, the Court concludes that
2 there is a high risk that the lack of pre-deprivation process—that is, a hearing
3 to determine whether Petitioners in fact present a danger or flight risk—has
4 resulted in Petitioners' unnecessary detention.

### 3. Government Interest

6 As to the third *Mathews* factor, "as many other courts have recognized,
7 there is no meaningful countervailing government interest that supports
8 detaining previously" released noncitizens like Petitioners "without a pre-
9 detention hearing." *Cruz*, No. 5:25-cv-02879, Dkt. 12 at 7 (collecting cases).
10 "[T]he government has no legitimate interest in detaining individuals who
11 have been determined not to be a danger to the community and whose
12 appearance at future immigration proceedings can be reasonably ensured by a
13 lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976,
14 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the
15 additional procedural safeguard of a hearing before a neutral adjudicator
16 imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at
17 *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)).
18 "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews,*
19 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

20 In sum, Petitioners have a strong interest in remaining free from
21 confinement, there is a significant risk that the Government's lack of
22 constitutionally-adequate procedures has resulted in their unnecessary
23 detention, and the Government's interest in refusing to provide such process
24 is minimal. The Court therefore concludes that the Government's re-detention
25 of Petitioners without adequate pre-deprivation process violated due process.
26 Accordingly, the Court orders Petitioners forthwith release and prevents their
27 re-detention absent pre-deprivation notice and a hearing at which the

Government must justify the need to confine them.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioners' immediate release, subject to appropriate conditions of supervision, and preventing their re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to confine them; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioners have been released from Respondents' custody.

Dated: March 4, 2026

_____
HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE